[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The following facts are not in dispute and are contained in the preliminary statement in plaintiff's Trial Brief.
The plaintiff, Albert Zesiger, is the owner of a parcel of waterfront land on Wilson's Cove at 75 Bluff Avenue, in the Rowayton section of Norwalk, Connecticut (hereinafter "Bluff Avenue parcel"). The property is Zoned Residence "AA." Mr. Zesiger also owns Tavern Island which is located directly opposite the Bluff Avenue parcel but approximately one-half mile offshore (hereinafter "island parcel"). The island parcel is improved with a residential dwelling and a caretaker's house and is used year round by the plaintiff and his family.
It is located in the Island Conservation Zone. The only means of access to the island is by boat. Consequently, the Bluff Avenue parcel and the island parcel have been, and are used, in unity with each other. In light of the nature of the island parcel and other similarly situated island parcels located in CT Page 8398 the Island Conservation Zone, the plaintiff filed an application for an amendment to the City of Norwalk Building Zone Regulations. The amendment would allow the occupants of a dwelling in an Island Conservation Zone to own and maintain a garage for their vehicles in any zone and if such garage is the only structure located on the parcel in such other zone, the garage would be deemed a use permitted by special permit under the zoning regulations.
The record reveals the following additional facts. By application dated February 13, 1990, plaintiff proposed an amendment to section 118-300(C) of the Building Zone Regulations of the City of Norwalk, (ROR #1). The amendment proposed the following:
 Amend Section 118-300(C) to read as follows (Except as underlined, all material in this Section is the same as existing Section 118-300(C):
"C. Regulations for development
 (1) A. Permitted uses. Amended effective 7-15-76, effective 9-14-77; effective 8-25-78) (a) One-family dwelling (b) Parks and playgrounds (c) Boathouses, landings and docks when not conducted as a business.
B. Accessory Uses and Structures.
 Notwithstanding anything in these regulations to the contrary, a garage for not more than four (4) motor vehicles owned by occupants of a dwelling in an Island Conservation Zone, may be effected and maintained on a parcel of land (in the minimum size permitted in such zone) in any other Zone subject to the setback lines established within such other zone. If the garage structure is the only structure located on the parcel of land in said other Zone, it shall be deemed to be a principal permitted use for the purposes of such other Zone."
CT Page 8399
(ROR #1). Plaintiff's reasons for seeking this amendment are contained in Schedule B to the application, as follows:
 In 1983, Applicant purchased the property at 75 Bluff Avenue, which was then the site of a residence and garage which property had, for many years, been used to serve Tavern Island for landing, parking, etc. Shortly thereafter, he applied for and, after lengthy application proceedings, received the necessary permits to demolish the existing residence and garage foundation and construct a two and one-half story dwelling and a large garage needed to store motor vehicles, boats and equipment ancillary to the use of residential premises on Tavern Island and the proposed dwelling on Bluff Avenue. As construction of the garage was completed and after the area for the proposed dwelling on Bluff Avenue was excavated, the personal situation of the Applicant changed to the point that construction of the dwelling on Bluff Avenue was neither required nor desirable. Applicant, at that time, believed that the garage, legally available to meet the needs of both the residential premises on Tavern Island and the proposed dwelling on Bluff Avenue, would remain legally available to meet the needs of the residential premises on Tavern Island alone.
(ROR #1), Schedule B). Plaintiff was cited by the zoning inspector for being in violation of certain regulations for maintaining an accessory structure without a principal structure. (ROR #1, Schedule B). His appeal of this order and alternative request for a variance were denied by the Norwalk Zoning Board of Appeals, and are the subject of his appeal in Zesiger v. Norwalk Zoning Board of Appeals, D.N. 10 40 93, currently pending before this court
The defendant zoning commission referred plaintiff's application to the Norwalk Planning Commission for review and comment on February 20, 1990, pursuant to the General Statutes. (ROR #3). The land use committee of the planning commission CT Page 8400 met on February 27, 1990 for review and discussion of plaintiff's proposed amendment. (ROR #4). The committee recommended to the planning commission that the amendment be approved with the modification that a provision be added requiring a special permit if the garage is the only structure on the land in the other zone. (ROR #5). The reason for their recommendation was "That given the unique circumstances relating to island residences, it is appropriate to allow a mainland garage as a special permit use." (ROR #5).
Plaintiff resubmitted his application for the amendment to the zoning commission, incorporating the recommendations of the planning commission, on March 9, 1990. (ROR # 6). This application proposed the following: Amend Section 118-300(C) to read as follows (Except as underlined, all material in this Section is the same as existing Section 118-300.
"C. Regulations for development.
 (1). A. Permitted Uses. (Amended effective 7/15/76; effective 9/14/77; effective 8/25/78) (a) One-family dwellings (b) Parks and playgrounds (c) Boathouses, landings and dock, when not conducted as a business.
B. Accessory Uses and Structures
 Notwithstanding anything in these regulations to the contrary, the following use and structure shall be permitted by Special Permit in accordance with the provisions of Article 40, Section 118-1450, Special Permits:
 a garage for not more than four (4) motor vehicles owned by occupants of a dwelling in an Island Conservation Zone, may be effected and maintained on a parcel of land (in the minimum size permitted in such zone) in any other Zone subject to the setback lines established within such other Zone.
 If the garage structure is the only structure located on the parcel of CT Page 8401 land in said other Zone, it shall be deemed to be a principal permitted use for the purposes of such other Zone." (ROR # 6), Schedule A).
By letter dated March 8, 1990 the planning commission reported to the zoning commission that at its March 7, 1990 meeting the planning commission adopted a resolution approving plaintiff's proposed amendment for the reason that it was appropriate given the unique situation of island residences. (ROR # 7). The zoning commission scheduled a public hearing on plaintiff's proposed amendment for April 18, 1990. (ROR #9). Public notice of the hearing was published in the Norwalk Hour on April 6 and 18, 1990, pursuant to General Statutes 8-3 (a). (ROR #10). The Department of Environmental Protection, in response to the zoning commission's request, found the proposed amendment consistent with the policies and provisions of the Connecticut Coastal Management Act. (ROR # 11). The DEP also commented that plaintiff's proposed amendment "would continue to allow for the potential establishment of non-water-dependent uses at waterfront zones in Norwalk. . . . [P]riority and preference must be given to water dependent uses. . . ." (ROR # 11).
In a memorandum to the chairman of the zoning commission from the chairman of the planning commission, it was recommended that plaintiff's proposed amendment be approved for the reason that it was appropriate to allow a mainland garage as a special permit use given the unique circumstances of island residences. (ROR # 12).
At the public hearing plaintiff's attorney pointed out that the regulations do not cover plaintiff's unique situation of living year-round on an island and requiring accommodations on the mainland for a garage and landing area. (Corrected ROR #13, p. 8). He stated that Mr. Zesiger should not be required to build a residence he does not need or, alternatively, tear down an existing garage which he does need. (Corrected ROR #13, p. 8). In opposition to the proposed amendment, Midge Unger, a member of the Zoning Board of Appeals, stated that she believed an island dweller had other options, such as renting a garage on the mainland, and that this amendment was an attempt to circumvent the zoning code and give special privileges to an island dweller that are unavailable to a mainlander. (Corrected ROR 13, p. 8). She further stated that a building lot in A-Zone, with only a garage on it, was not what the waterfront needs. (Corrected ROR #13, p. 8). Mrs. Unger was asked about the alternatives the Zoning Board Appeals had considered, which included allowing the garage to stand as an accessory for two years under a permit, having plaintiff build CT Page 8402 a house and rent it out, add a kitchen to the garage which would make it dwelling or merge the two properties. (Corrected ROR #13, opp. 8-9). None of these alternatives was acceptable to the plaintiff. (Corrected ROR #13, p. 9).
In rebuttal plaintiff's attorney stated that plans had been discussed to add a kitchen to the garage, but it was determined that it could not be done. (Corrected ROR #13, p. 9). He also stated that none of the neighbors opposed plaintiff's plan, and that the problem was with the Zoning Board of Appeals. (Corrected ROR #13, p. 9). Plaintiff's attorney also explained that it hadn't "dawned on" the plaintiff that he couldn't use the garage to service the island until the zoning inspector found him in violation of the regulation. (Corrected ROR #13, p. 10). The hearing was then closed. By memorandum dated May 16, 1990, the chairman of the zoning committee told the chairman of the zoning commission that it be resolved that the proposed amendment be denied for the reason that it was not appropriate to amend the zoning regulations to allow a mainland garage as a permitted use without an accompanying residential structure. (ROR # 15). The zoning commission unanimously voted to adopt that resolution at its May 26, 1990 meeting, (ROR #19), and notified plaintiff's attorney of that decision on May 17, 1990. (ROR #16). Legal notice of the decision was published in the Norwalk Hour on May 24, 1990. (ROR #18).
Plaintiff served this appeal of that decision on June 7, 1990. The court finds that the appeal is timely, having been taken within fifteen days of the date publication of the decision occurred. See General Statutes 8-8; Conn. Pub. Acts No. 90-286, 1, 3, 9 (1990).
To maintain this appeal from the decision of the zoning commission pursuant to General Statutes 8-8 the plaintiff must be aggrieved by the decision of the commission. Primerica v. Planning Zoning Commission, 211 Conn. 85,92, 558 A.2d 646 (1989). The owner of the property affected by the decision is considered classically aggrieved. Bossert Corp. v. Norwalk, 157 Conn. 279, 284, 253 A.2d 39 (1968). At the hearing before this court on June 19, 1991, the plaintiff presented evidence of his ownership of the Bluff Avenue property and Tavern Island, and the court found him to be aggrieved.
DISCUSSION
When a local zoning authority considers an amendment to its regulations it acts in a legislative capacity. Parks v. Planning Zoning Commission, 178 Conn. 657, 660, 425 A.2d 100
CT Page 8403 (1979). In such capacity the commission may amend its regulations "`whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for a change. . . .'" Id., 660 (citation omitted). The function of the trial court on review of the commission's actions is not to retry the case, but to uphold the decision if it is reasonably supported by the record. Burnham v. Planning Zoning Commission, 189 Conn. 261, 265,455 A.2d 339 (1983). If even one of the stated reasons is sufficient to support the decision, it should be upheld. Id. In considering a zoning amendment the commission acted pursuant to General Statutes 8-2.
This section requires:
 "regulations shall be made in accordance with a comprehensive plan . . .and shall be designed to promote health and the general welfare. . . . Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout the municipality."
The plaintiff claims that the Commission's decision was illegal, arbitrary and an abuse of discretion for two reasons. First, he claims that the record does not support the decision for the reason that the record indicates that it is appropriate to allow a mainland garage as a permitted use without an accompanying residential structure given that most of the Norwalk islands cannot be reached by foot or car and an owner, therefore, must store his vehicles on the mainland and travel to the island by boat. He also points out that the planning commission reviewed his proposed amendment and specifically found that it was appropriate, given an island dweller's unique circumstances. Further, plaintiff contends that at the public hearing it was pointed out to the commission that there was no regulation which covered the situation of an individual who lives in a year-round house in an island conservation zone and requires proper accommodations for a garage and landing area onshore.
Second, he argues that the commission did not act fairly and with proper motives and for valid reasons in denying the proposed amendment. He contends that by its failure to question the plaintiff or his attorney, and without any CT Page 8404 significant discussion among commission members prior to its negative vote, the commission acted unfairly, and merely found the amendment "not appropriate". The defendant contends that plaintiff created his own situation and is really asking the commission to commit an act of classical spot zoning to correct that situation.
The plaintiff's dilemma developed not from the original dwelling and garage on the mainland, which he had removed, and which he had replaced with a garage structure only; and which replacement was accomplished contrary to the construction plans upon which his building permit application was approved, thereby violating the zoning laws. Rather, the source of the plaintiff's dilemma is that after he had removed the existing building on the mainland, he built a replacement structure contrary to the permit he had obtained. It is the plaintiff's request to rezone to allow the newly constructed garage to remain on the mainland without a house which is central to the controversy.
The defendant suggests that the plaintiff has ". . .requested that the zoning commission legitimize his illegal acts. . . ." Moreover, the defendant suggests that the plaintiff wants ". . . . the zoning commission to commit an act of classical spot zoning in order to correct plaintiff's self-created situation.
Zoning commissions are endowed with a wide and liberal discretion as they are legislative authorities, and conditions and circumstances surrounding the adoption of zoning regulations are peculiarly within the knowledge of the zoning commission. See Lurie v. Planning Zoning Commission,160 Conn. 295, 312 (1971). When the commission adopts or amends a zoning regulation, it must do so in accordance with the comprehensive plan. This plan can be found in the zoning regulations. Whittaker v. Zoning Board of Appeals, 179 Conn. 650,656 (1980).
The powers of zoning commissions, however, are not without limits, and are circumscribed. Thus, in the absence of statutory grant, a zoning commission is powerless to act. See, Nicoli v. Planning Zoning Commission, 171 Conn. 89, 91
(1976). For example, when a change is made as to a single lot or a small area, the courts can overturn this decision on the basis that it is spot zoning, and arbitrary. Levinsky v. Zoning Commission, 144 Conn. 117, 124 (1956). "Spot zoning," it may be noted involves the reclassification of a small area of land in a manner that disturbs the tenor of the surrounding neighborhood. The change, in short, must be out of harmony with the comprehensive plan for zoning adopted to serve the CT Page 8405 community as a whole. Blaker v. Planning Zoning Commission,212 Conn. 471, 483 (1989).
The questions for the court to pass on are whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations. Langer v. Planning Zoning Commission, 163 Conn. 453, 460
(1972).
In the matter before this court, the plaintiff's objective is to ". . .disturb the tenor of the surrounding neighborhood. . . ." on the mainland where a garage without a house is not permitted. The court finds that zoning commission properly determined that the amendment proposed by the plaintiff was "inappropriate;" and that to do otherwise the zoning commission would have engaged in spot zoning if it had extricated the plaintiff from his self-created hardship. Here the requested zoning change is not part of the comprehensive plan and the effect would be to give an advantage to the plaintiff so that he could avoid the violation of the zoning laws.
The plaintiff also asserts that the ". . . Commission did not act fairly and with proper motives and for valid reasons in denying the proposed amendment." In support of this proposition the plaintiff refers the court to Gulf Oil Corp. v. Board of Selectmen, 144 Conn. 61, 66-67 (1956). This court does not disagree with that proposition. However, the plaintiff has not demonstrated to the satisfaction of the court the viability of his bold assertion that the". . . Commission apparently rendered its decision based solely on the statements of Zoning Board of Appeals member Midge Unger, whose statements pertained to the unrelated variance proceedings before the Zoning Board of Appeals."
On page 12 of the plaintiff's brief it is claimed that the amendment was denied ". . . . without significant discussion among the commission members." (Emphasis added). The extent to which commission members are required to engage in "significant discussion" is unclear to this court. However, it is clear to the court that a zoning commission is not required to give reasons for denying a zone change application. Calandro v. Zoning Commission, 176 Conn. 439, 441, (1979). It is noted that the commission stated its reason for the denial of the zone change request.
The plaintiff has failed to support his proposition to the satisfaction of the court that the commission. . .has not acted fairly, or with proper motives or upon valid reasons" in CT Page 8406 failing to ". . .make adequate provisions for properties located in the Island Conservation Zone;" in failing to ". . .take into account the unique features of those properties located in an Island Conservation Zone, to act in accordance with its own Comprehensive Plan of Zoning, and to act equitably to consider the unique and specialized needs of the owners of property located in the Island Conservation Zone. . . ."
Clearly the Commission denied the zoning amendment request as it was not appropriate. Keeping in mind that the function of the trial court on review of the Commission's actions is not to retry the case, but to uphold the decision if it is reasonably supported by the record; and if the stated reason is sufficient to support the decision, it should be upheld. (Citations omitted).
The court finds that the Commission's decision is reasonably supported by the record; and that the stated reason is sufficient to support its decision. Therefore, the decision of the Commission should be upheld.
Accordingly, the plaintiffs appeal is dismissed.
LEONARD M. COCCO, JUDGE